## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

HADDONFIELD BOROUGH BOARD
OF EDUCATION,

       Plaintiff,

    v.

M.L. and T.N., *on behalf of* J.N.,

       Defendants.

No. 1:22-cv-04355

**OPINION**

---

**APPEARANCES**:

Geoffrey N. Stark
Robert A. Muccilli
Sanmathi Dev
CAPEHART & SCATCHARD, P.A.
Laurel Corporate Center
8000 Midlantic Drive, Ste. 300
Mount Laurel, NJ 08054

    *On behalf of Plaintiff.*

Jamie M. Epstein
JAMIE EPSTEIN, ATTORNEY AT LAW
17 Fleetwood Drive
Hamilton, NJ 08690

    *On behalf of Defendants.*

**O'HEARN, District Judge.**

    This matter comes before the Court on Plaintiff Haddonfield Borough Board of Education's ("the Board") Complaint Seeking Interlocutory Appeal, (ECF No. 1), and the Court's previously-issued Order to Show Cause, directing the Board to show good cause why its Complaint

should not be dismissed for lack of subject matter jurisdiction. (ECF No. 24). Having reviewed the Board's Brief responding to the Order, (ECF No. 27), the Court decides this issue without oral argument pursuant to Local Rule 78.1. For the reasons that follow, the Court concludes that it lacks subject matter jurisdiction and that the Board's Complaint must be **DISMISSED**.

## I.     BACKGROUND

The Board is the public entity that supervises and manages the Haddonfield School District in Camden County, New Jersey. (Compl., ECF No. 1, ¶ 6). It is obligated to educate students with disabilities pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq*. (ECF No. 1, ¶ 6). Defendants M.L. and T.N. ("the Parents") are the parents of J.N., a student enrolled in the Haddonfield School District who is eligible for special education and related services under the IDEA, and are proceeding on behalf of their child.[1] (ECF No. 1, ¶ 7).

In Spring 2022, the Board sought to change J.N.'s placement from the Haddonfield Middle School to an out-of-district placement for the remainder of the 2021–22 school year and for the following year. (ECF No. 1, ¶ 17). This proposal came after what the Board describes as a series of "significant and disruptive behavioral incidents." (ECF No. 1, ¶ 18). Specifically, the Board proposed the change because it believes

> J.N. requires a highly structured clinical/behavioral education program that is specifically designed to meet his social and emotional needs. Such a placement provides the conditions for more intensive behavioral interventions and a setting in which variables can be manipulated in a way that is not possible in the Haddonfield Middle School.

(ECF No. 1, ¶ 18). The Parents rejected the Board's proposal. (ECF No. 1, ¶ 20).

After, as the Board alleges, "J.N.'s aggressive, rapidly escalating, unpredictable and disruptive behaviors" continued, the Board filed a Request for Emergent Relief and Expedited Due

---

[1]  Pursuant to Federal Rule of Civil Procedure 5.2(a)(3), the Court will use the minor's and parents' initials to protect the minor's privacy.

Process with the New Jersey Department of Education's Office of Special Education ("OSE") to place J.N. in an alternative educational setting, as required by the IDEA and New Jersey regulations. (ECF No. 1, ¶¶ 21–22). Because the next thirty days passed without an agreement to resolve the situation between the parties, OSE transmitted the Board's petition to the New Jersey Office of Administrative Law ("OAL") for adjudication by an impartial Administrative Law Judge ("ALJ"). (ECF No. 1, ¶¶ 10–11, 22). OAL then assigned the petition to the Honorable Tricia M. Caliguire, ALJ. (ECF No. 1, ¶ 22).

The parties engaged in a series of case management conferences in the weeks that followed and exchanged certain disclosures. (ECF No. 1, ¶¶ 23–25). Judge Caliguire also issued a Prehearing Order scheduling the petition for a hearing on June 23, 2022. (ECF No. 1, ¶ 23).

On June 20, 2022, the Parents' counsel emailed OSE and Judge Caliguire's assistant a document captioned "Answer & Counter Petition." (ECF No. 1, ¶ 26). The submission states that the Parents seek

> (A) "Finding Petitioner removal of JN from his placement and program violated state and federal law;" (B) "Returning Petitioner to his placement and program that was in effect on 4/13/22;" (C) "Granting Respondents all other appropriate compensatory and prospective relief;" and (D) "Reserving all civil claims against Petitioner and their Board Members, Administrators Agents, Employees and Contractors in their official and individual capacities."

(ECF No. 1, ¶ 27).

The Board opposed the Parents' submission in writing the next day. (ECF No. 1, ¶ 28). Specifically, it argued that it would be procedurally improper under state and federal law for Judge Caliguire to accept a "counterclaim" in an IDEA due process proceeding. (ECF No. 1, ¶ 28).

Judge Caliguire held a telephone conference with the parties the following day. (ECF No. 1, ¶ 29). She explained that she would accept and consider the Parents' submission over the Board's objection and instructed the parties to be prepared to proceed with their previously-

scheduled hearing the next day. (ECF No. 1, ¶ 29).

At the hearing, the Board orally requested a stay of proceedings pending interlocutory appeal. (ECF No. 1, ¶ 30). Judge Caliguire granted the stay, and later that day, entered a written letter order memorializing her decisions from the previous two days. (ECF No. 1, ¶¶ 30–31). Specifically, Judge Caliguire explained that she "did not accept the [Parents'] filing as a counter-claim in that it essentially sought the exact relief [they] would receive should [the Board] fail to prevail on its claims," except the Parents' "claim for compensatory education and prospective relief, as to which [she] dismissed, noting that should the Board fail to prevail, the award to J.N. of compensatory education would be within [her] discretion, notwithstanding the absence of such pleadings." (Exh., ECF No. 1-2 at 1).[2] This suit followed. (ECF No. 1).

## II.    PROCEDURAL HISTORY

The Board initiated this action on June 30, 2022, with the filing of its Complaint Seeking Interlocutory Appeal, asserting that Judge Caliguire erred under the IDEA and applicable state law in the parties' due process proceedings by allowing the Parents to proceed with a "counterclaim." (ECF No. 1). The Board filed an Affidavit of Service on July 19, 2022, certifying that the Parents were served on July 13, 2022. (ECF No. 4). After nearly two months passed without a response from the Parents, the Board sought and the Clerk of Court entered default against them on September 12, 2022. (ECF No. 5). The Board then filed a Motion for Default Judgment on October 4, 2022. (ECF No. 6).[3]

---

[2] Judge Caliguire also noted that, at the same time they filed their submission before her, the Parents filed a separate due process petition with OSE. (Exh., ECF No. 1-2 at 1). The Court understands that this separate petition was later withdrawn. (Tr., ECF No. 28 at 14:5–10).

[3] Upon filing its Motion for Default Judgment, the Board certified having served it upon the Parents' counsel. (ECF No. 6). Because counsel had not yet entered an appearance in this matter, the Court directed the Board by Text Order on October 5, 2022, to serve the Parents personally. (ECF No. 7). The Board certified its compliance by Affidavit on October 11, 2022. (ECF No. 8).

The Parents' response finally came on October 24, 2022, on their filing of a Motion for Miscellaneous Relief. (ECF No. 13). Specifically, the Parents sought (i) vacation of the default; (ii) dismissal of the Board's Complaint; (iii) vacation of a "stay-put" order entered by Judge Caliguire; and (iv) leave to file an answer and counterclaim. (ECF No. 13). The Board responded in opposition to this Motion on November 7, 2022. (ECF No. 16). The Court then scheduled oral argument on the Board's Motion for Default Judgment and the Parents' Cross-Motion for February 2, 2023. (Text Order, ECF No. 21).

At argument, after admonishing the Parents' counsel for failing to respond in timely a manner,[4] the Court expressed its concern that it lacks subject matter jurisdiction to decide this case. (Tr., ECF No. 28). Accordingly, later that day, the Court issued the present Order to Show Cause, directing the Board to show good cause why its Complaint should not be dismissed for lack of subject matter jurisdiction. (ECF No. 24). The Board filed its Brief responding to the Order on February 16, 2023. (ECF No. 27). Although the Court granted the Parents leave to respond by February 23, 2023—despite their remaining in default, (ECF No. 5)—none was timely filed. On February 24, 2023, however, the Parents' counsel filed a Letter explaining that they "shall not file a response to Plaintiffs Show Cause" and "shall stand on the record of their filings . . . and the motion hearing transcript." (ECF No. 29). Accordingly, the Court is prepared to rule.[5]

---

[4] Counsel's explanation for his client's failure to respond was his expectation that the Court would dismiss this matter *sua sponte*. (Tr., ECF No. 28 at 28:1–10). There is, of course, no such process by which this would happen without some sort of response from the Parents. The decision of counsel, the Parents, or both to simply sit back and allow default to be entered was a perilous litigation strategy.

[5] The Court would be remiss if it did not note that the long delay in adjudicating this case has been caused solely by the failure of the Parents and their counsel at every turn to respond in a timely manner and otherwise abide by procedural rules. Nevertheless, the Court resolves the matter before it and again notes that it can and should be expeditiously addressed in state administrative proceedings for the benefit of J.N.

### III.    **LEGAL STANDARD**

"Federal courts are courts of limited jurisdiction, and when there is a question as to our authority to hear a dispute, 'it is incumbent upon the courts to resolve such doubts, one way or the other, before proceeding to a disposition on the merits.'" *Zambelli Fireworks Mfg. Co., Inc. v. Wood*, 592 F.3d 412, 418 (3d Cir. 2010) (quoting *Carlsberg Res. Corp. v. Cambria Sav. & Loan Ass'n*, 554 F.2d 1254, 1256 (3d Cir. 1977)). The party invoking a court's jurisdiction bears the burden of demonstrating by a preponderance of the evidence that federal jurisdiction exists. *See McCann v. Newman Irrevocable Tr.*, 458 F.3d 281, 286 (3d Cir. 2006). If the court determines it lacks subject matter jurisdiction, it "may dismiss a suit *sua sponte* for lack of subject matter jurisdiction at any stage in the proceeding." *Zambelli*, 592 F.3d at 420; *see also* FED. R. CIV. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

Although this matter comes before the Court on its own motion, the Court applies the same standard it would had a defendant lodged a factual attack on its subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *See, e.g.*, *L.V. ex rel. G.V. v. Montgomery Twp. Sch. Dist. Bd. of Educ.*, No. 13-02595, 2013 WL 2455967, at *3 n.4 (D.N.J. June 5, 2013) (citing *Komninos v. Upper Saddle River Bd. of Educ.*, 13 F.3d 775, 778 (3d Cir. 1994)). In such a case, "it is permissible for a court to review evidence outside the pleadings," *United States ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007), and "no presumptive truthfulness attaches to plaintiff's allegations," *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

## IV.     <u>DISCUSSION</u>

The Board filed this action seeking an interlocutory appeal of Judge Caliguire's order declining to strike the Parents' prehearing submission stylized as a "Counter Petition" in the parties' IDEA due process proceedings in the New Jersey OAL. (Compl., ECF No. 1). Although the Board concedes that this appeal is interlocutory in nature, it argues that the issue presented is among the narrow set that may be heard in this Court without the administrative exhaustion typically required for IDEA appeals. (Board's Br., ECF No. 27 at 5–6). For the reasons that follow, however, the Court disagrees and dismisses its Complaint for lack of subject matter jurisdiction.

As the Board acknowledges, IDEA claims generally must be exhausted administratively prior to the filing of a suit in district court. *See* 20 U.S.C. § 1415(l); *R.R. v. Manheim Twp. Sch. Dist.*, 412 F. App'x 544, 548 (3d Cir. 2011) ("[T]he IDEA's administrative remedies must be exhausted before such an action is brought."). However, the Third Circuit has held that district courts may excuse this exhaustion requirement in one of four circumstances: (i) "where the issue presented is purely a legal question"; (ii) "where exhaustion would be futile or inadequate"; (iii) "when exhaustion would work 'severe or irreparable harm' upon a litigant"; or (iv) "where the administrative agency cannot grant relief." *Beth V. by Yvonne V. v. Carroll*, 87 F.3d 80, 88–89 (3d Cir. 1996) (quoting *Komninos*, 13 F.3d at 778). Here, the Board argues only that the issue presented is "a purely legal question." (ECF No. 27 at 5). That view is mistaken.

The question presented by the Board—whether Judge Caliguire exceeded her statutory authority by refusing to rule out the *possibility* that she *might* grant "compensatory and prospective relief" *if* the Board failed to succeed on its claims *after* the parties' due process hearing, (ECF No. 1-2)—cannot be described as purely legal. Rather, it's entirely hypothetical. This Court is not empowered to answer hypothetical questions, only actual cases and controversies. *See* U.S. CONST.

art. III, § 2; *Williams v. BASF Catalysts LLC*, 765 F.3d 306, 327 (3d Cir. 2014) ("[T]he judicial power does not extend to hypothetical disputes, and federal courts may not give opinions advising what the law would be upon a hypothetical state of facts." (quotations omitted)). Advisory opinions are prohibited. *E.g.*, *Armstrong World Indus., Inc. by Wolfson v. Adams*, 961 F.2d 405, 410 (3d Cir. 1992). Because that is precisely what the Board seeks here, its Complaint must be dismissed.

Among the conditions imposed by Article III's case-or-controversy requirement is the ripeness doctrine.[6] *Id.* at 411. Ripeness is a question of timing: it asks *when* a party may bring an action. *Id.* (citing *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580 (1985)). It has been developed, among other reasons, "to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 732–33 (1998) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148–49 (1967)). If a case is not ripe, it is not justiciable in federal court. *Id.*

To determine whether a case is ripe for consideration, courts examine "both the 'fitness of the issues for judicial decision' and the 'hardship to the parties of withholding court consideration.'" *Id.* (quoting *Abbott*, 387 U.S. at 149). Relevant factors in this examination include "(1) whether delayed review would cause hardship to the plaintiffs; (2) whether judicial intervention would inappropriately interfere with further administrative action; and (3) whether the courts would benefit from further factual development of the issues presented." *Id.* Each of these factors suggest that the present case is not yet ripe.

*First*, as to any hardship caused by delay, none would be inflicted here. The Board has not

---

[6] Ripeness is sometimes described as a prudential doctrine rather than a constitutional one, but regardless of its source, it constrains the Court's review here. *Armstrong*, 961 F.2d at 411 n.12.

and will not experience any hardship from Judge Caliguire fully considering its due process petition on the merits. No "adverse effects of a strictly legal kind, that is, effects of a sort that traditionally would have qualified as harm" have been imposed on it yet. *Id.* Indeed, none may ever come: Judge Caliguire might rule in its favor. Administrative proceedings have been stayed and a "stay put" order is in place protecting the Board's rights. (Exh., ECF No. 1-2 at 2–3; Exh., ECF No. 14 at 30). If Judge Caliguire ultimately rules against it, the Board can seek a stay pending appeal from the OAL or from this Court. The Board has nothing to lose from full administrative adjudication. The IDEA's requirements for as much should not be waived here.

*Second*, as to inappropriate interference with the administrative process, that is precisely what this Court's intervention would cause. Judge Caliguire has not yet had the opportunity to consider the merits of the Board's due process petition. The IDEA makes clear that she is meant to have that opportunity before this Court offers its input. § 1415(l). And once again, this might all be for naught: she might not enter any relief that the Board believes is unlawful. *See Ohio Forestry Ass'n*, 523 U.S. at 735 (explaining that "hinder[ing] agency efforts to refine its policies" weighed against ripeness because the agency might reconsider the plan at issue). But perhaps the best reason for the Court to avoid getting involved at this point came at oral argument, when the Board's counsel was unable to identify with specificity how Judge Caliguire should be restrained and how the Court could fashion an appropriate order to do so. (Tr., ECF No. 28 at 22:1–24:25).[7]

---

[7] Ultimately, the Board's objections seem to be promoting form at the expense of substance. The Court does not mean to minimize the procedural safeguards embedded in IDEA due process proceedings that protect students and school districts alike. All the same, it was striking to the Court that when pressed at argument to explain the difference between the relief Judge Caliguire suggested might be available and what ALJs order in mine-run cases lost by school districts, the Board could identify none. (ECF No. 28 at 20:13–24:25). Was Judge Caliguire's decision wrong on procedure? Maybe; the Court offers no opinion on the question. But if she was, would it make any substantive difference? Again, the Court offers no opinion, but it is hard to see one.

Essentially, the Board asks the Court to meddle in Judge Caliguire's consideration of the merits of its due process petition, hypothesizing what relief she might grant and under what authority. Such a course would short-circuit the statutory process and the Court declines the invitation to become so entangled.

*Finally*, as to the benefit of further factual development, it certainly would accrue here. Without Judge Caliguire's final decision, the Court cannot know if the Board actually will suffer harm and does not know the basis upon which Judge Caliguire might inflict that hypothetical harm. The Court would benefit from a full administrative record, as the IDEA requires, § 1415(l), before rendering any decision. *See Ohio Forestry Ass'n*, 523 U.S. at 736–37 (noting that judicial review would be more productive "where the consequences had been 'reduced to more manageable proportions,' and where the 'factual components [were] fleshed out, by some concrete action'"). Rather than issue a decision based on an incomplete record, the Court will dismiss the Board's Complaint so that it can administratively exhaust its claims and (if necessary) return with a complete record for the Court's review.

In sum, someday, the Court might be required to review the manner and outcome of Judge Caliguire's adjudication of the Board's due process petition. That day is not today. The legal question to which the Board seeks an answer is not yet ripe for review. Absent a pure legal question that the Court may answer without offending constitutional safeguards, the Board has not demonstrated its entitlement to excusal from the IDEA's administrative exhaustion requirements. If its review is required after exhaustion occurs, the Court will of course do so. Until then, however, the Court follows the approach taken by other courts in similar circumstances, *see, e.g.*, *L.M.P. ex rel. E.P. v. Fla. Dep't of Educ.*, 345 F. App'x 428, 432 (11th Cir. 2009) (affirming a district court's dismissal of an IDEA as nonjusticiable), and dismisses the Board's Complaint without prejudice

for lack of subject matter jurisdiction.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's Complaint Seeking Interlocutory Appeal, (ECF No. 1), is **DISMISSED** and all pending Motions are **DISMISSED AS MOOT**. An appropriate Order accompanies this Opinion.

**CHRISTINE P. O'HEARN**
**United States District Judge**

11